E-FILED
Friday, 11 October, 2024  02:39:20 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cr-30071 |
| | ) | |
| | ) | |
| DONTE CLAUSELL, | ) | |
| Defendant. | ) | |

### OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Defendant Donte Clausell's Motion to Dismiss Indictment [Doc. 61] and Supplemental Motion to Dismiss [Doc. 73].

## I.  BACKGROUND

Defendant Donte Clausell was charged in a single-count indictment with illegal possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). On February 1, 2023, Defendant entered a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of his motion to suppress evidence. (Doc. 47). Following the Seventh Circuit's decision in *United States v. Hatley*, 61 F.4th 536 (7th Cir. 2023) concerning the applicability of the Armed Career Criminal Act (ACCA), a hearing was scheduled at the Government's request to provide Defendant an opportunity to withdraw his guilty plea. (Doc. 57 at 4-5). At the hearing on June 1, 2023, Defendant confirmed he did not wish to withdraw his guilty plea. (Minute Entry of 6/1/2023).

On January 24, 2024, Defendant filed his motion to dismiss the indictment, claiming § 922(g)(1) is categorically unconstitutional or unconstitutional as applied to him under the Second Amendment following the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Defendant filed a supplemental motion to dismiss following the Supreme Court's recent decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). In response, the Government contends nothing in *Bruen* or *Rahimi* restricts the government's ability to prohibit felons from possessing firearms and the United States has a history of disarming similarly situated individuals.

On January 24, 2024, Defendant filed a motion to withdraw his guilty plea or, in the alternative, to continue generally based on his *Bruen* motion and need for additional time to file sentencing objections. (Doc. 62). On February 8, 2024, the Court denied Defendant's request to withdraw his guilty plea but granted his request for a general continuance of the sentencing hearing. (Text Order of 2/8/2024).

## II.   DISCUSSION

### A. Section 922(g)(1) and Supreme Court Precedent

Section 922(g)(1) makes it an offense for a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Defendant contends § 922(g)(1) is unconstitutional because it violates the Second Amendment, which provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As a member of "the people," Defendant claims he falls within the Second Amendment's protections because the United States did not

categorically withdraw the right to carry handguns after a citizen was convicted of a felony until the 20th Century. He argues that under the framework articulated by the Supreme Court in *Bruen*, § 922(g)(1) is not consistent with the nation's historical tradition of gun regulation.

Prior to *Bruen*, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008) noted the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581. The Court explained that, "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not just an unspecified subset." *Id.* at 580. Based on that language, Defendant contends the Second Amendment applies to felons and non-felons alike. However, the Court in *Heller* further held that the Second Amendment guarantees the right of "law-abiding, responsible citizens" to keep and bear arms for self-defense, but noted that the right to keep and bear arms "is not unlimited" and remains subject to "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id.* at 635, 626-27; *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)(extending *Heller* to state and local governments while reiterating *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'")

The Supreme Court has repeatedly stated that "the people" protected by the Second Amendment include "ordinary, law-abiding, adult citizens," *see Bruen*, 597 U.S. at 31-32, who are "members of the political community," *see Heller*, 554 U.S. at 580. *See also McDonald*, 561 U.S. at 786 (emphasizing *Heller*'s holding). The first sentence of *Bruen*

refers to the "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" as protected by the Second Amendment. *Bruen*, 597 U.S. at 8-9. "[O]rdinary, law-abiding citizens" is then repeated in the second sentence. *Id.* at 9. The Court reiterated that the Second Amendment "surely elevates above all interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Id.* at 26 (quoting *Heller*, 554 U.S. at 635). The final paragraph of the majority opinion in *Bruen* states in part: "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 71. Thus, *Bruen* and *Heller* clearly articulate that the Second Amendment protects responsible, law-abiding citizens.

In *Bruen*, the Supreme Court announced that lower courts should no longer balance interests such as an individual's right to possess a firearm and the state's commitment to promoting personal or public safety to determine the constitutionality of the challenged restriction. Based on the Second Amendment's text and the applicable history of firearms regulation, the government now bears the burden of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. Because people convicted of felonies existed in the United States when the Second Amendment was ratified in 1791, it follows that § 922(g)(1) addresses a "general societal

problem that has persisted since the 18th century." *Bruen*, 597 U.S. at 26. When a challenged regulation addresses a longstanding societal problem, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* If "the Founders themselves could have adopted" a particular regulation to confront a longstanding problem and did not do so, that could suggest that the law today is unconstitutional. *Id.* For "modern regulations that were unimaginable at the founding," the government must produce historical evidence that is "relevantly similar." *Bruen*, 597 U.S. at 28-29. "[I]f earlier generations addressed the societal problem, but did so through materially different means, that could also be evidence that a modern regulation is unconstitutional." *Id.* at 26-27.

The Supreme Court instructed courts to identify historical analogues to modern firearm regulations by assessing "how and why regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. While the Court in *Bruen* did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it directed courts to weigh as central considerations "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29. The Court further stated:

> To be clear, analogical reasoning under the Second Amendment is neither a regulatory straitjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue because doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that

the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.* at 30 (internal quotation marks and citations omitted).

**B.  *United States v. Rahimi***

In *United States v. Rahimi*, 144 S. Ct. 1889 (2024), the Supreme Court considered the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if the order includes a finding that he "represents a credible threat to the physical safety of an intimate partner," or a child of the partner or individual. *Id.* at 1894. In considering the constitutionality of the statute, the Court examined historical surety laws, authorizing "magistrates to require individuals suspected of future misbehavior to post a bond" and "going armed laws," which prohibiting "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* at 1900-01 (citation omitted). The Court noted the "two distinct legal regimes," *id.* at 1899, established that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896. In rejecting Rahimi's challenge to § 922(g)(8), the Court held that "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901.

### C. Appellate Decisions Interpreting *Bruen* and *Rahimi*

In *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023), the *en banc* Third Circuit became the first appellate court post-*Bruen* to hold § 922(g)(1) unconstitutional in an as-applied challenge. *Id.* at 98. In 1995, Range pled guilty and successfully completed a probationary sentence in Pennsylvania state court for one count of making a false statement to obtain food stamps. *Id.* His only other criminal infractions included minor traffic and parking tickets and a fishing without a license violation. *Id.* He filed a declaratory judgment action seeking a declaration that § 922(g)(1) violated the Second Amendment as applied to him. *Id.* at 99. The Third Circuit determined Range was among "the people" protected by the Second Amendment. *See Range*, 69 F.4th at 102 ("Unless the meaning of the phrase 'the people' varies from provision to provision—and the Supreme Court in *Heller* suggested it does not—to conclude that Range is not among "the people" for Second Amendment purposes would exclude him from those rights as well. . . . And we see no reason to adopt an inconsistent reading of "the people.'"). The Supreme Court recently vacated the judgment in *Range* and remanded the case to the Third Circuit for further consideration in light of *Rahimi*. *Garland v. Range*, 144 S. Ct. 2706 (July 2, 2024).

In noting that neither *Bruen* nor *Range* called into question § 922(g)(1)'s facial constitutionality or addressed its constitutionality in the criminal prosecution context, the Third Circuit has since made clear that its decision in *Range* would not apply to an individual like the Defendant in this case. *See United States v. Fadiga*, 2024 WL 3338304, at *3 (3d Cir. July 9, 2024). "*Bruen* did not cast doubt on longstanding prohibitions on the

possession of firearms by felons." *Id.* (internal quotation marks and citation omitted). The court explained:

> Range and Fadiga are different. Range had (1) a single, decades-old welfare fraud conviction; (2) received no prison time; and (3) showed that he wished to possess firearms for self-defense and hunting, *Range*, 69 F.4th at 98-99, whereas Fadiga is a criminal defendant who had (1) numerous criminal convictions, including for robbery, theft, and firearms offenses within the five years preceding the instant offense; (2) served several stints in prison and committed this offense while on probation; and (3) not sought civil relief before illegally possessing firearms.

*Id.* The court concluded that § 922(g)(1) did not violate the Second Amendment as to Fadiga. *Id.*

Several other circuits have upheld § 922(g)(1) since *Bruen*. *See Vincent v. Garland*, 80 F.4th 1197, 1199-1202 (10th Cir. 2023) (upholding a § 922(g)(1) challenge as to a nonviolent felon who had been convicted of bank fraud) and *United States v. Jackson*, 69 F.4th 495, 505-06 (8th Cir. 2023) ("[T]he Supreme Court's assurances . . . cast no doubt on the constitutionality of laws prohibiting [felon firearm possession] [so] we conclude that [§ 922(g)(1)] is constitutional as applied."), *reh'g en banc denied*, 85 F.4th 468 (8th Cir. 2023). Both *Vincent* and *Jackson* were vacated by the Supreme Court and remanded for further consideration in light of *Rahimi*. *Vincent v. Garland*, 144 S. Ct. 2708 (July 2, 2024); *Jackson v. United States*, 144 S. Ct. 2710 (July 2, 2024).

On remand, the Eighth Circuit recently held *Rahimi* does alter its prior conclusion that § 922(g)(1) is constitutional as applied, explaining:

> The historical record suggests that legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms, not merely to address a person's demonstrated propensity for violence. This conclusion is bolstered by the Supreme Court's repeated statements in *Bruen* that the Second Amendment protects the

right of a "law-abiding citizen" to keep and bear arms. *See* 597 U.S. at 8, 15, 26, 29-31, 33 n.8, 38, 60, 70. As stated by the D.C. Circuit, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019); *cf. Rahimi*, 144 S. Ct. at 1902 ("[I]f imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible.").

On this view, for which there is considerable support in the historical record, Congress did not violate Jackson's rights by enacting § 922(g)(1). He is not a law-abiding citizen, and history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society.

*United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024).

The Fifth Circuit recently affirmed the constitutionality of § 922(g)(1) against a facial and as-applied challenge by a felon with convictions for vehicle theft, evading arrest, and gun possession crimes. *United States v. Diaz*, ___ F.4th ___, 2024 WL 4223684, at *1 (5th Cir. Sept. 18, 2024). "At the time of the Second Amendment's ratification, those—like Diaz—guilty of certain crimes—like theft—were punished permanently and severely. And permanent disarmament was a part of our country's arsenal of available punishments at that time." *Id.* at *9. The court determined § 922(g)(1) "fits neatly" in that tradition, concluding it was constitutional as applied to Diaz and facially. *Id.* The Tenth Circuit also recently rejected a facial challenge to § 922(g)(1) because "*Rahimi* does not indisputably and pellucidly abrogate" its prior decisions upholding the statute's constitutionality. *United States v. Curry*, 2024 WL 3219693, at *4 n.7 (10th Cir. June 28, 2024).

In *United States v. Johnson*, 2024 WL 3371414 (11th Cir. July 11, 2024), the Eleventh Circuit considered the constitutionality of § 922(g)(1) on plain error review. *Id.* at *1. The court noted it previously rejected a similar challenge to the statute following *Bruen* and concluded that *Rahimi* did not change its analysis, stating that the Court "once again declared that the prohibition on the possession of firearms by felons is presumptively lawful." *Id.* at *3 (internal quotation marks and citation omitted). In *United States v. Langston*, 110 F.4th 408 (1st Cir. 2024), the First Circuit also determined the district court did not plainly err in refusing to dismiss a § 922(g)(1) charge because "[n]o case from the Supreme Court or our court holds that § 922(g)(1) is unconstitutional in any of its applications" and "the Supreme Court has stated repeatedly over sixteen years, from *Heller* to *Rahimi*, that felon-in-possession laws are presumptively lawful." *Id.* at 419-20.

In considering whether an individual with felony convictions is permitted under the Second Amendment to possess both firearms and ammunition, the Seventh Circuit in a case decided prior to *Rahimi* noted that the defendant's argument is hard to square with *Heller*'s unequivocal statement that "longstanding prohibitions on the possession of firearms by felons" are valid. *United States v. Gay*, 98 F.4th 843, 846 (7th Cir 2024) (citation omitted). Moreover, the Supreme Court in *McDonald* reiterated that all of the reservations and provisos in *Heller* remain valid. *Id.* "And in the Court's most recent Second Amendment decision . . . *Bruen* . . . Justices Alito and Kavanaugh, whose votes were essential to the majority, wrote separately to say that *Bruen* did not change anything about *Heller*." *Id.* (citing *Bruen*, 597 U.S. at 72, 142 S. Ct. 2111 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must

be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80-81, 142 S. Ct. 2111 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing the statement in *Heller* about the propriety of denying firearms to felons)). *Id.*

Citing *Range* and *Vincent*, the court in *Gay* went on to "assume for the sake of argument that there is *some* room for as-applied challenges, but that assumption does not assist Gay." *Id.* The Seventh Circuit noted the emphasis in *Bruen* on the phrase "law-abiding, responsible citizens" and determined it did not describe Gay, who had been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon in prison. *Id.* at 847. Gay was also on parole and subject to a condition that he would not possess a firearm. *Id.* The Seventh Circuit concluded, "Just as *Samson* holds that parolees lack the same privacy rights as free persons, we conclude that parolees lack the same armament rights as free persons." *Id.* (comparing *United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) (person on bail awaiting trial lacks a constitutional right to carry firearms)). The Seventh Circuit also found it significant that Range had challenged § 922(g)(1) through a declaratory judgment action, unlike Gay who had "violated the law in secret and tried to avoid detection." *Id.*

While Defendant in this case claims some of his convictions have been expunged and others involve the distribution of controlled substances, which he alleges is not a historical basis for prohibiting the possession of firearms, the Presentence Investigation Report indicates the 36-year old Defendant has at least seven felony convictions and 22

criminal history points, which is nearly double the amount necessary to establish a criminal history category of VI. Significantly, at the time of the offense, Defendant was also under a criminal justice sentence serving a supervised release term in Central District of Illinois Case Number 19-cr-30014.[1] One of the supervised release conditions prohibited Defendant from committing a federal, state, or local crime. Defendant is accused of violating his terms of supervised release by possessing the firearm that formed the offense conduct in this case. Consistent with the Seventh Circuit's holding in *Gay*, the Court finds supervised releasees lack the same armament rights as free persons.

According to the PSR, Defendant also has pending charges of attempted murder and aggravated discharge of a firearm, Adams County Circuit Court Docket No. 2020-CF-451, for conduct alleged to have occurred less than three months before the offense conduct in this case. Defendant committed the offense conduct in this case approximately one month after he was released on bond in the Adams County case. Thus, Defendant was also prohibited from possessing a firearm at the time of the offense because he was out on bail awaiting trial on charges of attempted murder and aggravated discharge of a firearm. *See Gay*, 98 F.4th at 847 (citing *Perez-Garcia*, 96 F.4th at 1191-92).

## III.  CONCLUSION

Even assuming there is some room for as-applied challenges to § 922(g)(1), Mr. Clausell's challenge to the constitutionality of the statute is precluded by *Gay* as he was

---

[1] Defendant's supervised release term relates to Eastern District of Missouri convictions for conspiracy to distribute and possess with intent to distribute heroin, cocaine, and cocaine base and use of a communication facility to facilitate the commission of distribution of heroin, cocaine, and cocaine base. The case was jurisdictionally transferred to the Central District of Illinois.

serving a supervised release term and under pre-trial release conditions for pending state charges at the time he possessed the firearm. In addition, Defendant is not a "law-abiding, responsible" person who has a Second Amendment right to possess firearms based on his extensive criminal history. *See Gay*, 98 F.4th at 847. Even if Defendant was not barred by *Gay* from possessing a firearm, the Court would follow the reasoning of the several federal courts of appeal which have considered challenges to § 922(g)(1) since *Bruen*, all of which denied the as applied challenges by individuals who are similarly situated to Defendant. To the extent Defendant alleges § 922(g)(1) is categorically unconstitutional, Defendant's argument is without merit because the Government has shown that the statute is constitutional in some of its applications. *See Rahimi*, 144 S. Ct. at 1898 (A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'") (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Accordingly, Defendant Donte Clausell's Motion to Dismiss [Doc. 61] and Supplemental Motion to Dismiss [Doc. 73] are both DENIED.

ENTER: October 11, 2024

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE